Babcock, J.
The election officers are alleged to have returned the vote on the subway ordinance under four heads', viz.: votes “Yes”— “No”—“Blank Notes,” which were those ballots not marked, and “The total number of votes cast upon the question.”
There were 35,313 votes “Yes.”
There were 38,628 votes “No.”
There were 4,487 blank ballots.
Total were 78,428 of votes and blanks.
The statute providing for referendum on elevated electric railroads .and tunnels is Section 3283d. The last sentence reads: “And if at such election a majority of the votes cast on such question shall be against said grant, the same shall be ineffective and void.”
If the blank ballots cast are to be deemed “votes cast on such question,” then a majority was not against the grant, and it stands undefeated by the referendum. If, on the contrary, an *633 unmarked ballot is not a vote on tbe question, then the majority was against the grant, and the same is void.
In Dexter v. Raine, Auditor, 18 L. B., 62, the facts are, that electors of Hamilton county voted on the “Harrison Monument” proposal, and the act provided for a tax to be levied for it “if a majority of the votes east be in the affirmative.” There were 23,136 with the “No” erased, and 16,844 with the “Tes” erased, and 14,000 on which both “Tes” and “No” appeared. The question was, whether the 14,000 unmarked ballots were “votes east” at the election. At the general”term the superior court held:
“Ballots on which both ‘Tes’ and ‘No’ .appeared were not votes cast upon the question, they .were void and of no effect. A vote is but the expression of the will of the voter (State v. Green, 37 O. S., 230). Where no will is expressed, no vote is cast. The man who casts a ballot expressing no will does not cast a vote any more than he who absents himself from the polls. ’ ’
This decision was affirmed by the Supreme Court on review.
It is claimed by the demurrants, that a vote in blank may have been cast intentionally to express a will or purpose to vote so as to increase the number of “nos” necessary to defeat the grant, and still avoid voting expressly for it. This would give a blank vote all the force of a vote in favor of the grant. ■ This shows no such purpose could exist in the voter’s mind except through misapprehension or mistake. For, if a blank vote is as potential in favor of the grant as an affirmative vote would be, what does the voter of a blank gain by this indirection?
Again, why should he wish to oppose the voters who are in favor of defeating the grant, but be unwilling to express his choice in its favor? The court is of opinion this is fanciful.
This is the only referendum provided where the grant stands, unless defeated at the polls to which it is referred. All others, and there are many, require an affirmative endorsement at the polls, else they fail. Repeatedly the courts of the state have held, under such affirmative statutes, that “blank ballots” are not votes cast on the question, and can not be counted so as to swell the necessary number of votes for the grant in order to make it *634 carry. By the same logic, they can not be counted ifco swell the number of votes necessary to defeat the grant, where it stands unless a majority vote against it. It is contended a purpose to change the rule of interpretation must have been in the legislative mind, or this referendum would not have been given a negative form. This is fanciful, and arises from reading into the statute a meaning the words do not import. It is indifferent whether the statute requires a majority for the grant to make it good, or a majority against it to kill it. Only when the votes were an exact tie' could it make any difference; and to suppose such a situation as a tie in a polling of votes, in a city large enough for railroad tunnels, to have been contemplated by the Legislature is a vagary and not to be entertained.
Is there danger of the board of canvassers certifying the vote in such a way as to defeat the expressed will of the people ?
In Dalton v. State, ex rel Richardson, 43 O. S., 662, the court says:
“The duty of the canvassers of the election is not a judicial but a ministerial act, in the performance of which there is no discretion to be exercised. A board of - canvassers at an election possesses no power or authority to judge of the validity of returns or of votes. • The canvassers are only to receive the returns and to count them, leaving all questions as to their validity or deficiency to another tribunal.”
The demurrer admits the allegations of the petition, and it alleges the board of canvassers will, unless restrained, ‘ ‘ count, canvas, tabulate and abstract the ballots which did not express any vote upon the question, as votes upon the question, and will certify that a majority of the votes cast at such election were hot against the grant.”
Such a certificate might not obscure the facts so as to mislead as to the true number of votes cast on the question, but such a ‘ certificate would not be accurate nor truthful, for the 4487 blank ballots were not votes, and should not in the canvas be confused with the votes for and against the grant. It is enough that this certificate is liable to mislead, and the.danger warrants the exercise of the restraining and correcting power of the law.
Demurrer is overruled.